# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>PITTSBURGH ATHLETIC ASSOCIATION, *et al.,* [1]<br>　　　　*Debtors.* | Jointly Administered at:<br>Bankruptcy No. 17-22222-JAD<br><br>Bankruptcy Nos:<br>17-22222-JAD, and<br>17-22223-JAD |
| PITTSBURGH ATHLETIC ASSOCIATION, et al,<br>　　　　*Movants,*<br>v.<br><br>NO RESPONDENTS. | Chapter 11<br><br>Doc. No. _____ |

## JOINT PLAN OF REORGANIZATION DATED DECEMBER 22, 2017

TUCKER ARENSBERG, P.C.

/s/*Jordan S. Blask*_____
Jordan S. Blask, Esq. (Pa. I.D. 308511)
Jillian Nolan Snider, Esq. (Pa. I.D. 202253)
1500 One PPG Place
Pittsburgh, PA  15222
Phone: (412) 566-1212
Fax: (412) 594-5619
jblask@tuckerlaw.com
jsnider@tuckerlaw.com

*Counsel for the Debtors*

---

[1] The Debtors have the following cases pending Pittsburgh Athletic Association, Bankruptcy No. 17-22222-JAD and the Pittsburgh Athletic Association Land Company, Bankruptcy No. 17-22223-JAD, both cases are being jointly administered under Case No. 17-22222-JAD.

**INTRODUCTION** ...……………….................................................................Page 3

**Article I.**        **Definitions and Interpretation** ……………………………………………Page 3

**Article II.**       **Treatment of Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims** ........................................................................Page 11

**Article III.**      **Classification of Claims** ...........................................................Page 13

**Article IV.**       **Treatment of Claims**.................................................................Page 15

**Article V.**        **Acceptance or Rejection of the Plan** .......................................Page 18

**Article VI.**       **Provisions Governing Distributions** .........................................Page 18

**Article VII.**      **Means for Implementation and Execution of the Plan** ...........Page 20

**Article VIII.**     **Procedures for Resolving and Treating Disputed Claims** ......................Page 22

**Article IX.**       **Treatment of Executory Contracts and Unexpired Leases**.....................Page 24

**Article X.**        **Effect of the Plan on Claims**.....................................................Page 25

**Article XI.**       **Effectiveness of the Plan** .........................................................Page 27

**Article XII.**      **Effects of Confirmation** ...........................................................Page 27

**Article XIII.**     **Retention of Jurisdiction** .........................................................Page 28

**Article XIV.**      **Miscellaneous Provisions**.........................................................Page 29

BANK_FIN:577964-3 032279-180179

## INTRODUCTION

Pittsburgh Athletic Association ("PAA") and Pittsburgh Athletic Association Land Company ("PAALC" and together with PAA collectively, the "Debtors") propose the following Joint Plan of Reorganization (the "Plan") pursuant to section 1121(a) of the Bankruptcy Code. Reference is made to the Joint Disclosure Statement to Accompany the Joint Plan of Reorganization dated December 22, 2017(the "Disclosure Statement") for (i) a discussion of the Debtors' history, business and post-bankruptcy reorganization efforts, and (ii) a summary and analysis of this Plan. TO THE EXTENT THAT THIS PLAN IS INCONSISTENT WITH THE DISCLOSURE STATEMENT, THIS PLAN WILL GOVERN.   Debtors file this joint Plan because (i) PAA is the sole shareholder of PAALC's capital stock and therefore 100% owner of PAALC; (ii) the Debtors' Assets and liabilities are substantially intertwined; (iii) the Debtors have maintained their books and records on a combined basis; (iv) the Debtors prepare consolidated financial statements, which have been reviewed on a consolidated basis throughout their existence; and (v) have operated as a single entity since the Clubhouse opened.   The Plan is predicated upon the closing of the sale of the Sale Assets, as that term is defined below, and to the extent necessary the sale of the Artwork and other personal property, which will provide the Debtors with funding to pay their creditors in accordance with the priorities established by the Bankruptcy Code and the terms of this Plan.   Unless otherwise agreed, creditors of the Debtors with Allowed Claims will receive a 100% distribution on their Allowed Claims.

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

**Definitions.** As used in the Plan, the following terms shall have the respective meanings specified below, unless the context otherwise requires:

1.1      "**Administrative Expense Claim**" means a Claim for the costs and expenses of administration arising during the period commencing on the Petition Date and ending on the

BANK_FIN:577964-3 032279-180179

Effective Date under Sections 503(b), 503(c), 507(a) or 507(b) of the Bankruptcy Code, including, but not limited to, (i) any actual and necessary costs or expenses of preserving the Estates or conducting the business of the Debtors, (ii) administrative expenses previously allowed by the Bankruptcy Court, (iii) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code, including Professional Fee Claims, (iv) Claims, pursuant to Section 503(b)(9) of the Bankruptcy Code, for the value of goods received by the Debtors in the 20 days immediately prior to the Petition Date and sold to the Debtors in the ordinary course of the Debtor's businesses, and (v) all fees and charges assessed against the Debtors pursuant to 28 U.S.C. § 1930.

**1.2** "**Allowed**" means, with respect to a Claim, any Claim, proof of which was timely and properly filed or, if no proof of Claim or proof of interest was filed, which has been or hereafter is listed by the Debtors on their Schedules as liquidated in amount and not disputed or contingent and, in either case, as to which no objection to allowance has been interposed on or before the expiration of the time within which to object to such Claim as set forth in the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder. Unless otherwise specified in the Plan or by order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest on such Claim from and after the Effective Date.

**1.3** "**Artwork**" means all of the artwork, paintings, sculptures and memorabilia owned by PAA.

**1.4** "**Assets**" means all real and personal property assets of the Debtors.

**1.5** "**AVB**" means Allegheny Valley Bank.

**1.6** "**Avoidance Actions**" means any and all actions arising under or actionable by the Estate pursuant to Sections 544, 545, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code, and expressly includes such actions against any and all persons and entities listed on the Debtor's Statement of Financial Affairs, Number 3, filed in the Bankruptcy Case.

**1.7** "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time.

**1.8** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Pennsylvania or, if such court ceases to have jurisdiction over the Chapter 11 Cases, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases.

**1.9** "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

4

**1.10** "**Bar Date**" means, as applicable: (i) November 20, 2017, for the filing of any prepetition Claim against the Debtors, and (ii) November 27, 2017 for the filing of any prepetition Claim against the Debtors by Governmental Units. The Plan does not extend any Bar Date established by the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules, and the earliest date applicable to the filing of a Claim shall govern.

**1.11** "**Board**" means collectively the Board of Directors for the Debtors, Pittsburgh Athletic Association and the Board of Directors for Pittsburgh Athletic Association Land Company.

**1.12** "**BT Loan**" means certain pre-petition notes executed by PAA and delivered to the Blanche Trust.

**1.13** "**Business Day**" means any day other than a Saturday, a Sunday, and any other day on which commercial banks in Pittsburgh, Pennsylvania are required or authorized to close by law or executive order.

**1.14** "**Causes of Action**" shall means any and all claims, actions, adversary proceedings (other than Avoidance Actions), causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments and demands whatsoever, whether pending or not pending, known or unknown, whether or not scheduled as an asset of the Debtors, disputed or undisputed, legal or equitable, absolute or contingent, that are already pending or that have accrued or are accruing to the Debtors or their respective successors and/or assignees, or that may be pursued derivatively by or on behalf of the Debtors or the Estates.

**1.15** "**Chapter 11 Case(s)**" means the case under Chapter 11 of the Bankruptcy Code commenced by Pittsburgh Athletic Association under the caption *In re Pittsburgh Athletic Association*, Chapter 11 Case No. 17-22222-JAD and the case commenced by Pittsburgh Athletic Association Land Company under the caption *In re Pittsburgh Athletic Association Land Company*, Chapter 11 Case No. 17-22223-JAD, and jointly administered under Case No. 17-22222-JAD which cases are currently pending in the Bankruptcy Court.

**1.16** "**Claim**" means any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, known or unknown.

**1.17** "**Class**" means any group of substantially similar Claims classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

**1.18** "**Closing**" means the final step in transferring the Sale Assets to Walnut PAA, LP and the Purchase Price to the Debtors.

BANK_FIN:577964-3 032279-180179

**1.19**   "**Closing Date**" means the day that the Sale Assets are sold to Walnut PAA which shall occur no earlier than March 1, 2018.

**1.20**   "**Club Lease**" means the oral lease from 1912 between PAA and PAALC as memorialized in writing by a Memorandum of Lease executed by PAALC and PAA on April 3, 1962.

**1.21**   "**Club Parcel**" means the real property owned by PAALC located at 4215 Fifth Avenue, Pittsburgh, Pennsylvania 15213, bearing tax parcel identification number 27-R-138 and containing approximately 33,136 square feet of land.

**1.22**   "**Collateral**" means any property or interest in property of the Estates of the Debtors subject to a lien to secure the payment or performance of a Claim, which lien is valid, perfected and enforceable under applicable law, and is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.23**   "**Committee**" means the Official Committee of Unsecured Creditors of the Pittsburgh Athletic Association as appointed by the United States Trustee.

**1.24**   "**Confirmation Date**" means the first date after which the Bankruptcy Court enters an order confirming the Plan pursuant to section 1129 of the Bankruptcy Code and upon which all of the condition set forth in section 11.1 are satisfied.

**1.25**   "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**1.26**   "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.27**   "**Confirmation Scheduling Order**" means the order of the Bankruptcy Court (i) approving the Disclosure Statement and fixing the date for the hearing on confirmation of the Plan; and (ii) fixing the date for filing and serving objections to confirmation of the Plan

**1.28**   "**Debtors**" means Pittsburgh Athletic Association and Pittsburgh Athletic Association Land Company as debtors and debtors in possession under Chapter 11 of the Bankruptcy Code.

**1.29**   "**DIP Lender**" means JDI Loan, LLC/Rollover Fund, LLC.

**1.30**   "**DIP Loan**" means the post-petition Note executed by PAA and given to JDI for debtor-in-possession financing, consisting of a Loan in the original principal amount of $750,000.00, which was subsequently increased to $1,500,000.

6

**1.31**    "**Disbursing Agent**" means Gleason and Associates, P.C., the Debtors' financial advisors with a principal place of business at 420 Fort Duquesne Blvd., Suite 525, Pittsburgh, Pennsylvania 15522.

**1.32**    "**Disclosure Statement**" means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.33**    "**Disputed Claim**" means any Claim, proof of which was timely and properly filed, and (a) which has been or hereafter is listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement of the parties or by an order of the Bankruptcy Court, or (b) as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order. Prior to (i) the filing of an objection to a Claim or (ii) the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, for purposes of the Plan, a Claim shall be considered a Disputed Claim if (i) the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent or unliquidated, or (ii) the Claim is not listed on the Schedules.

**1.34**    "**Disputed Claims Reserve**" means, in the event there exists any Disputed Claims on the Effective Date, the reserve established in accordance with Article VIII of the Plan, to hold cash that would be distributable to the holders of such Claims if such Claims are subsequently Allowed, as set forth more fully in Article VIII of the Plan.

**1.35**    "**Effective Date**" means the date on which the Plan shall become effective, which date shall be as soon as reasonably practicable after the date on which the conditions specified in Article 11.1 of the Plan have been satisfied or waived.

**1.36**    "**Equity Interest**" means the ownership interest of PAA in PAALC.

**1.37**    "**Estates**" means the estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

**1.38**    "**Excluded Assets**" means the assets which are being retained by the Reorganized Debtor: (a) the Reorganized Debtor's Artwork, all china, dishware, furniture, linens, silver, and/or any other equipment, furnishings, memorabilia, and/or tangible assets located at the Club Parcel; (b) all intellectual property owned by the Debtors including, branded materials, copyrights, trademarks, and service marks; (c) Pennsylvania liquor license known as Liquor License CC-1/LID No. 2815; (d) all claims and actions arising under the United States Bankruptcy Code Chapter 5; (e) any contracts, including employment and/or labor agreements, entered into by the Debtors; and (f) all legal claims or causes of action accrued prior to the Debtors' filing the Bankruptcy Case including, but not limited to, any professional malpractice claims.

BANK_FIN:577964-3 032279-180179

**1.39** "**Final Order**" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or motion for reargument or rehearing is then pending or as to which any right to appeal, petition for certiorari, or move to reargue or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been upheld by the highest court to which such order was appealed, or from which certiorari, reargument or rehearing was sought and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

**1.40** "**Gleason**" means Gleason and Associates, P.C., the Debtors' financial advisors.

**1.41** "**Ground Lease**" means the 99-year ground lease between PAALC and OFAHA for the development of the Marriott Autograph hotel dated January 30, 2015, as amended.

**1.42** "**HFF**" means Holiday Fenoglio Fowler, L.P., the Debtors' real estate and capital advisors.

**1.43** "**Hotel Parcel**" means the real property owned by PAALC located adjacent to the Club Parcel between Bigelow Boulevard and Lytton Avenue, Pittsburgh, Pennsylvania, bearing tax parcel identification number 27-R-ll0, and containing approximately 23,685 square feet of land

**1.44** "**Impaired**" means any holder of a Claim for which its legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan.

**1.45** "**JDI**" means JDI Loans, LLC/Rollover Fund, LLC.

**1.46** "**Limited Partnership Agreement**" means that certain agreement, as set in more detail in the PSA, whereby the Reorganized Debtor will receive new equity in Walnut PAA.

**1.47** "**Members**" means the Members of Pittsburgh Athletic Association.

**1.48** "**Membership Interests**" means the membership interests held by the individual members of PAA.

**1.49** "**NRF**" means the National Retirement Fund

**1.50** "**NRF Claim**" means the allowed claim of the National Retirement Fund.

**1.51** "**OFAHA**" means Oakland Fifth Avenue Hotel Associated, L.P.

**1.52** "**OFAHA Loans**" means certain loan agreements including a Promissory Note dated June 3, 2014, in the original principal amount of $575,000.00, and a Loan Agreement dated March 12, 2015, and a Delayed Draw Term Note dated March 12, 2015, in the original principal amount of $1,372,744.00

8

**1.53**    "**PAA**" means the Debtor, Pittsburgh Athletic Association.

**1.54**    "**PAA Board**" means the Board of Directors for the Debtor, Pittsburgh Athletic Association.

**1.55**    "**PAA Condos**" means those condominium units consisting of a Fitness Facility, Squash Courts and the Grille Room, as those terms are defined in the PSA.

**1.56**    "**PAALC**" means the Debtor, Pittsburgh Athletic Association Land Company.

**1.57**    "**PAALC Board**" means the Board of Directors for the Debtor, Pittsburgh Athletic Association Land Company.

**1.58**    "**Person**" means an individual, partnership, corporation, Limited Liability Company, business trust, joint stock company trust, unincorporated association, joint venture, governmental authority, governmental unit or other entity of whatever nature.

**1.59**    "**Petition Date**" means May 30, 2017, the date on which the Debtors filed voluntary petitions for relief under Chapter 11.

**1.60**    "**Plan**" means this Chapter 11 plan of reorganization, including all exhibits and schedules annexed hereto, either in its present form or as it may be altered, amended or modified from time to time.

**1.61**    "**Plan Documents**" means the forms of documents effectuating the transactions contemplated by this Plan, which documents shall be in form and content reasonably acceptable to the Debtors.

**1.62**    "**PITT AA, LLC**" means the successor in interest to AVB.

**1.63**    "**Prepetition Lenders**" means PITT AA LLC, as assignee of AVB, OFAHA, and the Blanche Trust.

**1.64**    "**Prepetition Loans**" means collectively the BT Loan, the OFAHA Loans and the PIT AA LLC Loans.

**1.65**    "**Priority Claim**" means a Priority Tax Claim or Priority Non-Tax Claim.

**1.66**    "**Priority Non-Tax Claim**" means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code.

**1.67**    "**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in section 507(a)(8) of the Bankruptcy Code.

9

**1.68** **"Professional"** means any Person employed by the Debtors or any Committee pursuant to a Final Order in accordance with § 327 and/or § 1103 of the Bankruptcy Code.

**1.69** **"Professional Fee Claim"** means any Claims against the Debtors for fees and expenses incurred from the Petition Date through the Effective Date by any Professional that is filed on or before any applicable Bar Date for such Claims under Sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code.

**1.70** **"Professionals' Lien"** means the lien granted to the Professionals in Reorganized Debtor's Artwork pursuant to the terms and conditions of the Plan.

**1.71** **"PSA"** means that certain Agreement of Purchase and Sale dated November 27, 2017 by and between the Debtors and Walnut as the same may be amended from time to time.

**1.72** **"Purchase Price"** means the agreed amount of $11,913,000.00 plus the $325,000 success fee owed to HFF as set forth in the PSA.

**1.73** **"Real Property Assets"** means collectively the Club Parcel and Hotel Parcel.

**1.74** **"Reorganized Debtor"** means the PAA on and after the Effective Date.

**1.75** **"Reorganized Debtor's Artwork"** means (i) the Artwork not sold at auction, and (ii) the excess proceeds of the Artwork sold at auction that is not used to the pay Allowed Claims other than Professional Fees.

**1.76** **"Sale Assets"** means the Real Property Assets and any personal property assets of the Debtors incidental to the Real Property Assets which are not part of the Excluded Assets and the Ground Lease which is are being sold pursuant to the terms of the PSA.

**1.77** **"Sale Proceeds"** the amount of funds that the Debtors will receive from the sale of the Sale Assets.

**1.78** **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

**1.79** **"Secured Claim"** means a Claim held by any Person against the Debtors secured by Collateral, but only to the extent of the value, as set forth in the Plan, as agreed to by the holder of such Claim and the Debtors, or as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of such Person's interest in the Estate's interest in such Collateral; provided, however, that a Secured Claim shall not include any portion of the Claim to the extent that the value of such Person's interest in the Collateral is less than the amount of such Claim.

BANK_FIN:577964-3 032279-180179

1.80   "**Secured Tax Claims**" means the Allowed Secured Claims of the Internal Revenue Service and the Commonwealth of Pennsylvania.

1.81   "**Setoff Claim**" means any Secured Claim secured by a right to offset a mutual debt owing by such creditor to the Debtors that arose before the Commencement Date against the claim of such creditor against the Debtors that arose before the Commencement Date.

1.82   "**TAPC**" means Tucker Arensberg, P.C., counsel for the Debtors and Reorganized Debtor.

1.83   "**Title Company**" means Chicago Title Insurance Company.

1.84   "**Unimpaired**" means any holder of a claim whose legal contractual or equitable rights are not altered, modified or damaged by the proposed treatment under the Plan.

1.85   "**Unsecured Claim**" means any Claim other than a Secured Claim, an Administrative Expense Claim or a Priority Claim.

1.86   "**Walnut**" means Walnut Capital Acquisitions, LLC.

1.87   "**Walnut PAA**" means Walnut PAA, LP, or any successors and or assignees thereof.

**Other Terms.**  A term used in the Plan that is not defined shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

**Construction of Certain Terms.**  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

## ARTICLE II.
## TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS

### 2.1 Administrative Expense Claims.

Holders of Allowed Administrative Expense Claims of the Debtors will receive in full satisfaction thereof an amount in cash equal to the Allowed amount of such Claim on or before the later of: (i) thirty (30) days after the Effective Date; or (ii) fifteen (15) days after the Administrative Expense Claim becomes an Allowed Claim.

BANK_FIN:577964-3 032279-180179

The Internal Revenue Service and Pennsylvania Department of Revenue are not holders of Allowed Administrative Expense Claims.

The DIP Loan is an Allowed Administrative Expense Claim and will be paid in full at the Closing.

Claims under this Section 2.1 shall not include Professional Fee Claims. Treatment of Professional Fee Claims is set forth in Section 2.2 below.

**2.2 Professional Fee Claims**.

(a) Holders of Professional Fee Claims will receive in full satisfaction of their Allowed Claim an amount in cash equal to the Allowed amount of such Professional Fee Claim on or before the later of: (i) thirty (30) days after the Effective Date; (ii) fifteen (15) days after the Professional Fee Claim becomes an Allowed Claim; or (iii) on such other terms as may be mutually agreed upon between the holder of such Allowed Professional Fee Claim and the Debtors; except that, notwithstanding the aforementioned provisions, holders of unpaid Professional Fee Claims that have been approved by previous Order of the Court (i.e. pursuant to the Order Approving Procedures for Interim Compensation) will be paid in full at the Closing. Holders of Professional Fee Claims shall file final applications for fees and expenses within thirty (30) days after the Effective Date.

(b) Professionals are hereby granted and conferred a lien and security interest in all of the Reorganized Debtor's Artwork, effective upon the date of the Effective Date and without the necessity of the Reorganized Debtor executing a security agreement, financing statement or other proof and perfection of security interest. The Professionals' Lien is granted by the Reorganized Debtor to secure the prompt repayment of any Allowed Professional Fee Claims and expenses which remain unpaid as of the Effective Date and any other Professional fees and expenses incurred by the Reorganized Debtor following the Effective Date.

(c) No fee applications will be required for professional fees incurred after the Effective Date, except that payment on said fees and expenses shall not occur until all Allowed Claims under the Plan have been paid in full or the appropriate reserves have been funded to pay said Claims in full pending their allowance.

(d) An Administrative Expense Claim that is a Professional Fee Claim, and for which a fee application has been properly filed pursuant to Section 2.2 of the Plan, shall become an Allowed Professional Fee Claim only to the extent allowed by a Final Order.

(e) Unless the Holder of a Professional Fee Claim agrees to a different treatment of such Claim in writing, any unpaid Professional Fee Claim shall be paid the full amount thereof thirty (30) days after such Professional Fee Claim becomes an Allowed Claim pursuant to entry of an order of the Bankruptcy Court. Allowed unpaid Professional Fee claims will be paid at closing in full.

BANK_FIN:577964-3 032279-180179

**2.3 Priority Tax Claims.** Holders of Allowed Priority Tax Claims of the Debtors shall receive in full satisfaction thereof an amount in cash equal to the Allowed amount of such Claim on or before the later of (i) thirty (30) days after the Effective Date or (ii) fifteen (15) days after the Allowed Priority Tax Claim can be determined and, if necessary, allowed by the Court together with interest thereon (if and only to the extent required) at the applicable statutory rate required for such Claim if such is a real property tax. Otherwise, interest shall be paid at the rate of three percent (3%) per annum for all other Priority Tax Claims in this Chapter 11 Case. Holders of Allowed Priority Tax Claims will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with, such Claims. Any Claim for any such penalty, or demand for any such penalty, will be deemed disallowed by confirmation of this Plan.  Priority Tax Claims do not include Administrative Expense Claims.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND GENERAL PROVISIONS

**3.1** In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, as described in Article II, have not been classified and, thus, are excluded from the Classes that follow. Claims are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| CLASS | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNTS | ESTIMATED RECOVERY |
|---|---|---|---|---|
| Class 1 - Allowed Secured Claims of PITT AA LLC | Not impaired | No | $2,165,849.10 | 100% |
| Class 2 - Allowed Secured Claim of OFAHA | Not impaired | No | $2,223,832.10 | 100% |
| Class 3 - Allowed Secured Claim of the Blanche Trust | Not impaired | No | $435,388.36 | 100% |
| Class 4 – Allowed Secured Claim of the Internal Revenue Service | Not impaired | No | $345,348.00 | 100% |
| Class 5 – Allowed Secured Claim of the Commonwealth of Pennsylvania | Not impaired | No | $150,904.30 | 100% |
| Class 6 - Allowed Secured Real Estate Tax Claims | Not impaired | No | $0.00 | 100% |
| Class 7 - Allowed Unsecured Priority Tax Claims | Not impaired | No | $326,126.15 | 100% |

| Class 8 - Allowed Unsecured Priority Non-Tax Claims | Not impaired | No | $176,394.86 | 100% |
|---|---|---|---|---|
| Class 9 - Allowed General Unsecured Claims | Not impaired | No | $3,498,435.51 | 100% |
| Class 10 - Equity Interest of PAA in PAALC | Not Impaired | No | Not Applicable | The value of the PAA Equity Interest in PAALC is equal to the amount that PAA will receive from the sale of the Sale Assets. |

**3.2 General Rules of Classification**. Generally, a Claim or interest is classified in a particular Class for voting and distribution purposes only to the extent the Claim or interest qualifies within the description of that Class, and is classified in another Class or Classes to the extent the Claim or interest qualifies within the description of such other Class or Classes.

**3.3 Membership Interests.**    PAA is an uncertificated Pennsylvania not-profit corporation and in accordance with 15 Pa.C.S.A. § 5753 there are no owners or equity holders. Membership in PAA provides Members with access to the social and athletic services offered in compliance with PAA's tax exempt purpose.  The Members of PAA are not entitled to accept or reject the Debtors' Plan.

**3.4 Administrative Expense Claims**. Administrative Expense Claims have not been classified and are excluded from the Classes of Claims in accordance with section 1123(a)(1) of the Bankruptcy Code.  For information purposes only and not to be construed as a definitive analysis of the Administrative Claims, the following represents the Debtors' estimate of Administrative Expense Claims:

| **Administrative Expense Claim Holder** | **Basis of Claim** | **Estimated Amount** |
|---|---|---|
| Tucker Arensberg, P.C. | Professional Fees | $366,000.00 |
| Gleason & Associates, P.C. | Professional Fees | $188,000.00 |
| Leech Tishman Fuscaldo & Lampl, LLC | Professional Fees | $121,000.00 |
| Babst Calland Clements & Zomnir, PC | Professional Fees | $25,000.00 |
| JDI | DIP Loan | $1,500,000.00 |
| PA Department of Revenue | Tax Claim | $0.00 |
| Internal Revenue Service | Tax Claim | $0.00 |

**3.5 Satisfaction of Claims**. The treatment to be provided for Allowed Claims pursuant to this Plan and the consideration provided herein shall be in full satisfaction, settlement, release and discharge of such respective Claims, pursuant to the Plan.

14

**3.6   Bar   Dates   for   Administrative   Expense   Claims**. **PROOFS   OF ADMINISTRATIVE EXPENSE CLAIMS AND APPLICATIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS WHICH HAVE ARISEN ON OR AFTER THE COMMENCEMENT DATE MUST BE FILED AND SERVED PURSUANT TO THE PROCEDURES SET FORTH IN THE CONFIRMATION ORDER.** The bar date for Administrative Expense Claims and Professional Fee Claims does not apply to Administrative Expense Claims incurred in the ordinary course of the Debtor's business which will be paid in the ordinary course of the Debtor's business.

**ARTICLE IV.**
**TREATMENT OF CLAIMS**

### 4.1 Class 1 - Secured Claims of PITT AA LLC

**(a) Impairment and Voting.** Class 1 Claims are not impaired by the Plan. Holders of Allowed Claims in Class 1 are not entitled to vote to accept or reject the Plan and shall conclusively be deemed to have accepted the Plan.

**(b) Distributions.** On the later of (i) the Closing Date or (ii) fifteen (15) days after the Class 1 Claim can be determined and, if necessary, allowed by order of the Bankruptcy Court, each holder of an Allowed Class 1 Claim shall receive in full satisfaction of its claim in an amount in cash equal to the Allowed amount of its Claim with interest, or such holder may be treated on such less favorable terms as may be agreed to by such holder.

### 4.2 Class 2 - Secured Claims of OFAHA

**(a) Impairment and Voting.** Class 2 Claims are not impaired by the Plan. Holders of Allowed Claims in Class 2 are not entitled to vote to accept or reject the Plan and shall conclusively be deemed to have accepted the Plan.

**(b) Distributions.** On the later of (i) the Closing Date or (ii) fifteen (15) days after the Class 2 Claim can be determined and, if necessary, allowed by order of the Bankruptcy Court, each holder of an Allowed Class 2 Claim shall receive in full satisfaction of its claim in an amount in cash equal to the Allowed amount of its Claim with interest, or such holder may be treated on such less favorable terms as may be agreed to by such holder.

### 4.3 Class 3 - Secured Claims of the Blanche Trust

**(a) Impairment and Voting.** Class 3 Claims are not impaired by the Plan. Holders of Allowed Claims in Class 3 are not entitled to vote to accept or reject the Plan and shall conclusively be deemed to have accepted the Plan.

**(b) Distributions.** On the later of (i) thirty (30) days after the Effective Date or (ii) fifteen (15) days after the Class 3 Claim can be determined and, if necessary, allowed by order of the Bankruptcy Court, each holder of an Allowed Class 3 Claim shall receive in full

BANK_FIN:577964-3 032279-180179

satisfaction of its claim in an amount in cash equal to the Allowed amount of its Claim with interest, or such holder may be treated on such less favorable terms as may be agreed to by such holder.

### 4.4 Class 4 - Secured Claims of the Internal Revenue Service

**(a) Impairment and Voting.** Class 4 Claims are not impaired by the Plan. Holders of Allowed Claims in Class 4 are not entitled to vote to accept or reject the Plan and shall conclusively be deemed to have accepted the Plan.

**(b) Distributions.** On the later of (i) thirty (30) days after the Effective Date or (ii) fifteen (15) days after the Class 4 Claim can be determined and, if necessary, allowed by order of the Bankruptcy Court, each holder of an Allowed Class 4 Claim shall receive in full satisfaction of its claim in an amount in cash equal to the Allowed amount of its Claim with interest, or such holder may be treated on such less favorable terms as may be agreed to by such holder.

### 4.5 Class 5 - Secured Claims of the Commonwealth of Pennsylvania

**(a) Impairment and Voting.** Class 5 Claims are not impaired by the Plan. Holders of Allowed Claims in Class 5 are not entitled to vote to accept or reject the Plan and shall conclusively be deemed to have accepted the Plan.

**(b) Distributions.** On the later of (i) thirty (30) days after the Effective Date or (ii) fifteen (15) days after the Class 5 Claim can be determined and, if necessary, allowed by order of the Bankruptcy Court, each holder of an Allowed Class 5 Claim shall receive in full satisfaction of its claim in an amount in cash equal to the Allowed amount of its Claim with interest, or such holder may be treated on such less favorable terms as may be agreed to by such holder.

### 4.6 Class 6 - Secured Real Estate Claims

**(a) Impairment and Voting.** Class 6 Claims are not impaired by the Plan. Holders of Allowed Claims in Class 6 are not entitled to vote to accept or reject the Plan and shall conclusively be deemed to have accepted the Plan.

**(b) Distributions.** On the later of (i) the Closing Date or (ii) fifteen (15) days after the Class 6 Claim can be determined and, if necessary, allowed by order of the Bankruptcy Court, each holder of an Allowed Class 6 Claim shall receive in full satisfaction of its claim in an amount in cash equal to the Allowed amount of its Claim with interest, or such holder may be treated on such less favorable terms as may be agreed to by such holder.

BANK_FIN:577964-3 032279-180179

### 4.7 Class 7 - Unsecured Priority Tax Claims

**(a) Impairment and Voting.** Class 7 Claims are not impaired by the Plan. Holders of Allowed Claims in Class 7 are not entitled to vote to accept or reject the Plan and shall conclusively be deemed to have accepted the Plan.

**(b) Distributions.** On the later of (i) thirty (30) days after the Effective Date or (ii) fifteen (15) days after the Class 7 Claim can be determined and, if necessary, allowed by order of the Bankruptcy Court, each holder of an Allowed Class 7 Claim shall receive in full satisfaction of its claim in an amount in cash equal to the Allowed amount of its Claim, or such holder may be treated on such less favorable terms as may be agreed to by such holder.

### 4.8 Class 8 - Unsecured Priority Non-Tax Claims

**(a) Impairment and Voting.** Class 8 Claims are not impaired by the Plan. Holders of Allowed Claims in Class 8 are not entitled to vote to accept or reject the Plan and shall conclusively be deemed to have accepted the Plan.

**(b) Distributions.** On the later of (i) thirty (30) days after the Effective Date or (ii) fifteen (15) days after the Class 8 Claim can be determined and, if necessary, allowed by order of the Bankruptcy Court, each holder of an Allowed Class 8 Claim shall receive in full satisfaction of its claim in an amount in cash equal to the Allowed amount of its Claim, or such holder may be treated on such less favorable terms as may be agreed to by such holder.

### 4.9 Class 9 - General Unsecured Claims

**(a) Impairment and Voting.** Class 9 Claims are not impaired by the Plan. Holders of Allowed Claims in Class 9 are not entitled to vote to accept or reject the Plan and shall conclusively be deemed to have accepted the Plan.

**(b) Distributions.** On the later of (i) thirty (30) days after the Effective Date or (ii) fifteen (15) days after the Class 9 Claim can be determined and, if necessary, allowed by order of the Court, each holder of an Allowed Class 9 Claim shall receive in full satisfaction of its claim in an amount in cash equal to the Allowed amount of its Claim, or such holder may be treated on such less favorable terms as may be agreed to by such holder.  To the extent that funds are insufficient to pay all Allowed General Unsecured Claims in full the balance will be paid within thirty (30) days after receipt of the proceeds of the sale of the Artwork.

### 4.10 Class 10 - Equity Interest of PAA in PAALC

**(a) Impairment and Voting.** The Class 10 Claim is not impaired by the Plan. PAA is not entitled to vote to accept or reject the Plan and shall conclusively be deemed to have accepted the Plan.

**(b) Distributions.** PAA is the holder of an unimpaired interest. Under the Plan the Sale Assets of the Debtors will be sold to Walnut PAA and PAALC will no longer possess

any assets of value.  Once all Allowed Claims have been paid, all excess cash will be returned to PAA for future use in its ongoing operations as the Reorganized Debtor.  PAA as the Reorganized Debtor will receive new equity in Walnut PAA through the Limited Partnership Agreement and will be the owner of the PAA Condos. The Reorganized Debtor will retain the Excluded Assets.

## ARTICLE V.
## ACCEPTANCE OR REJECTION OF THE PLAN

**5.1 Voting of Claims.** Only holders of an Allowed Claim in an Impaired Class of Claims are entitled to vote to accept or reject the Plan. There are no Impaired Classes under the Debtors' Plan entitled to vote on the Plan.

**5.2 Acceptance by a Class of Creditors or Interest Holders.** Consistent with section 1126(c) of the Bankruptcy Code and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.  There are no Impaired Classes under the Debtors' Plan entitled to vote on the Plan.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

**6.1 Distributions Under the Plan**.

(a) **Effective Date Payments.**  Within thirty (30) days of the Effective Date the Disbursing Agent will (i) remit to holders of Allowed Administrative Expense Claims and Allowed Priority Claims an amount in cash equal to the Allowed amount of such Claims, or such lesser amounts as agreed to by such holders; (ii) pay to Allowed Unsecured Claims the Allowed amount of such Claim; and (iii) remit to the Disputed Claims Reserve in respect of Disputed Unsecured Claims cash equal to the amount of such Disputed Unsecured Claims. All distributions made to holders of Claims under the Plan shall be in full and final satisfaction of all Claims.

(b) **Subsequent Distributions.** After the Effective Date, to the extent cash is available from (i) the Disputed Claims Reserve following the disallowance or reduction of Disputed Claims, or (ii) undeliverable, time barred or unclaimed distributions to holders of Allowed Claims, such cash shall be returned to the Reorganized Debtor for the ultimate benefit of its Members. After the Effective Date, the Disbursing Agent shall distribute to the holders of Claims Allowed by a Final Order of the Bankruptcy Court after the Effective Date cash equal to the Allowed portion of such holder's Allowed Claim and shall distribute to the Disbursing Agent for subsequent distribution cash equal to that portion of such holder's Claim that is disallowed by a Final Order of the Bankruptcy Court.  ***Once all Allowed Claims have been paid, all excess cash will be returned to PAA for use in its ongoing operations as the Reorganized Debtor.***

BANK_FIN:577964-3 032279-180179

**(c) Distributions of Cash.** Any payment of cash made by the Disbursing Agent pursuant to the Plan may be made at the option of the Disbursing Agent either by check drawn on a domestic bank or by wire transfer from a domestic bank.

**(d) Delivery of Distributions**. Distributions to holders of Allowed Claims will be made to the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by a new address as set forth (a) on a proof of claim filed by a holder of an Allowed Claim or (b) in another writing notifying the Disbursing Agent (at the address set forth in the Plan) of a change of address. If any holder's distribution is returned as undeliverable, within sixty (60) days thereafter, the Disbursing Agent must be notified of the holder's current address.  If that notice is not timely provided, no further distributions will be made to such holder.

**6.2  Unclaimed Distributions.** Checks issued in accordance with the Plan by the Disbursing Agent to holders of Allowed Claims will be null and void if not negotiated within sixty (60) days after the date of issuance. Requests for reissuance of any check must be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued within 120 days following the date of original issuance of the affected payment. Thereafter, the amount represented by such voided check will irrevocably revert to the Reorganized Debtor and the Claim for which the non-negotiated payment was made will be discharged and forever barred from asserting such Claim against the Debtors and/or the Reorganized Debtor.

**6.3  Compliance with Tax Requirements.** To the extent applicable, the Disbursing Agent in making distributions under the Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Disbursing Agent may withhold the entire distribution due to any holder of an Allowed Claim or interest until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property withheld will then be paid by the Disbursing Agent to the appropriate authority. If the holder of an Allowed Claim or interest fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the holder of the need for such information or for the cash necessary to comply with any applicable withholding requirements, then the holder's distribution shall be treated as an undeliverable distribution in accordance with this Article.

**6.4  Setoffs.**  After notice and hearing, the Debtors may, in accordance with section 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors may hold against the holder of such Allowed Claim. However, neither the failure to affect such a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtors or Reorganized Debtor of any such claims, rights and causes of action that the Debtors or Reorganized Debtor may possess against such holder.  The amount necessary

19

to satisfy any Claim that may be subject to setoff shall be placed into the Disputed Claim Reserve pursuant to the Plan.

**6.5 Professional Fees and Expenses.** Each Professional retained by order of the Bankruptcy Court requesting compensation in these Chapter 11 Cases pursuant to sections 330 or 503(b) of the Bankruptcy Code will be required to file a final application for an allowance and payment of final compensation and reimbursement of expenses in these Chapter 11 Cases incurred through the Effective Date no later than thirty (30) days after the Effective Date. Objections to any such application shall be filed on or before a date to be set by the Bankruptcy Court.

**6.6 Transactions on Business Days.** If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**7.1 Sale of the Sale Assets.** Within thirty (30) days after the Confirmation Order is entered, the Debtors will sell the Sale Assets to Walnut PAA pursuant to the PSA for the Purchase Price. Walnut PAA will convey the PAA Condos to the Reorganized Debtor at closing. On or before the Closing Date, the Reorganized Debtor will execute Walnut PAA's Limited Partnership Agreement, as contemplated by the PSA, which will provide that the Reorganized Debtor will receive a five percent (5%) limited partnership interest in Walnut PAA. The Reorganized Debtor's interest will entitle the Reorganized Debtor to receive five percent (5%) of the net cash flow from the operations of the Sale Assets (after making provisions for appropriate capital reserves and expenses), and after a cumulative preferred return of nine percent (9%) to the partners contributing equity dollars to Walnut.

**7.2 Tax Consequences of the Sale of Sale Assets.** With respect to the Pennsylvania Department of Revenue, since PAALC has always functioned as a part of PAA and PAA is a 501(c)(7) tax exempt entity, PAALC is exempt from Pennsylvania taxes (e.g., Corporate Net Income and Capital Stock and Franchise taxes).

The sale of the Sale Assets to Walnut PAA is not a taxable event under the Internal Revenue Code. The contemplated transaction is not a taxable event in accordance with the provisions of Section 512(a)(3)(D) of the Internal Revenue Code regarding the exclusion of gains from the sale of assets. The Debtors were formed in 1908 and 1909, and have operated as a single tax exempt entity. PAALC's Real Property Assets have always been included in PAA's Assets in its Form 990's. The internal financial statements and reviewed financial statements of the Debtors are presented on a consolidated basis. In all respects, Debtors are and operate as a single tax exempt entity. Moreover, the Internal Revenue Code excludes gains arising from sale transactions when the proceeds from the sale are reinvested in club facilities in furtherance of the tax exempt purpose of the 501(c)(7) entity. The Debtors will use the Sale Proceeds to pay their

creditors.  The PAA as the Reorganized Debtor will continue its tax exempt purpose and reinvest the remaining proceeds in replacement club facilities (i.e. the PAA Condos).

As set forth herein, the Internal Revenue Service and Pennsylvania Department of Revenue are not and will not become holders of Allowed Administrative Expense Claims arising out of the sale of the Sale Assets.

In accordance with 11 U.S.C. § 1146, the Real Property Assets are being sold pursuant to a confirmed plan of reorganization and therefore the transfer is exempt from realty transfer taxes.

To confirm that the sale of the Sale Assets does not create a taxable event under the Internal Revenue Code, the Debtors will request the Court to so find in the Confirmation Order.

**7.3 Sale of Artwork.**  PAA shall sell so much of its Artwork as is necessary to pay all Allowed General Unsecured Claims.  To the extent taxes are owed on the sale of the Artwork, PAA will pay those taxes out of the sale proceeds.

**7.4 Funding.** The holders of Allowed Secured Claims and Allowed Secured Tax Claims which constitute liens on the Real Estate Assets shall be paid at the closing of the sale of the Sale Assets. The Disbursing Agent will subsequently pay all Classes of Claims and all Administrative Expense Claims and Professional Fee Claims in cash on or before the later of (i) thirty (30) days after the Effective Date or (ii) fifteen (15) days after the Claim or Administrative Expense can be determined and, if necessary, allowed by the Court.  To the extent that funds are insufficient to pay all Allowed General Unsecured Claims in full as stated in this Section 7.4 the balance will be paid within thirty (30) days after receipt of the proceeds of the sale of the Artwork.

**7.5 Post-Confirmation Responsibilities.** After the Effective Date, the Disbursing Agent shall administer the Disputed Claims Reserve. On and after the Effective Date, the Reorganized Debtor shall be solely responsible for filing any tax returns for, and for all other tax matters relating to, the Debtors or Reorganized Debtor.

**7.6 Corporate Action.** As of the Effective Date, (i) PAA's Equity Interest in PAALC will be extinguished and cancelled and (ii) the Reorganized Debtor shall perform each of the actions required by the terms of the Plan, in the time period set forth in the Plan.

**7.7 Documents and Further Transactions.** Each of the officers or directors of the Debtors are authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, including without limitation, the Plan Documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**7.8 Causes of Action**.

(a) On November 30, 2017, the Debtors filed an adversary complaint against OFAHA at adversary case no. 17-02238-JAD seeking to: (1) Avoid and Recover Pre-Petition Fraudulent Transfers Pursuant to 11 U.S.C. §§548, 550 & 544 and the Pennsylvania Uniform Fraudulent

Transfer Act; and, in the alternative, (2) Avoid and Recover A Preferential Pre-Petition Transfer Pursuant To 11 U.S.C. §§547 & 550.

(b) Before the later of the Effective Date or the expiration of any applicable statutes of limitations, the Debtors may file and prosecute any or all Causes of Action of the Debtors, and the Debtors may settle any Causes of Action with Bankruptcy Court approval.  On the Effective Date, all remaining Causes of Action, whether filed or unfiled, will be transferred to the Reorganized Debtor and may thereafter be prosecuted, settled, or abandoned without Bankruptcy Court approval by the Reorganized Debtor.  Notwithstanding anything to the contrary herein, pending the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtor, in its sole discretion reserves the right to commence any Cause of Action or Avoidance Action and to defend any Cause of Action.  No distribution will be made to the holder of any Claim, including by way of setoff or recoupment by such Claimant, if the Debtors or the Reorganized Debtor has commenced any such action until it is resolved by final order or settlement or given notice to the applicable party of intent to commence such action.  Notwithstanding anything to the contrary, on a Cause of Action or Avoidance Action against the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such Cause of Action is resolved by Final Order or otherwise in accordance with the Plan.  Prosecution and settlement of such claims, rights, defenses, and Causes of Action will be the responsibility of the Reorganized Debtor exclusively, pursuant to the provisions of the Plan.  The Reorganized Debtor will or will not pursue those claims, rights, defenses, and Causes of Action, as appropriate, in accordance with the Reorganized Debtor's commercially reasonable judgment.

(c)  The Debtors have claims against (i) Pittsburgh History & Landmarks Foundation, and (ii) Meyer Unkovic & Scott, LLP and preserve all rights with respect thereto.  The entry of the Confirmation Order shall not bar any Causes of Action that may be brought by the Debtors or the Reorganized Debtor.

(d)  Any compromise or settlement of a Cause of Action by the Debtors before the Effective Date will be subject to approval of the Bankruptcy Court.  After the Effective Date, the Reorganized Debtor will not be required to (but may, in its sole discretion) seek approval of the Bankruptcy Court to commence, pursue, prosecute, settle, compromise, or abandon any Causes of Action.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**8.1 No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no cash or other property shall be distributed under the Plan on account of any Disputed Claim, unless and until such Claim becomes an Allowed Claim or Interest.

**8.2 Resolution of Disputed Claims.** Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtors and the Reorganized Debtor shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code) to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to

which the objection is made as soon as practicable, but in no event later than sixty (60) days after the Effective Date (the "Objections Bar Date") or any extension thereto. From and after the Effective Date, all objections shall be litigated to a Final Order except to the extent the Debtors elects to withdraw any such objection or the Debtors and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court. A Disputed Claim as to which no objection is filed by the Objections Bar Date shall become an Allowed Claim.

**8.3 Reserve Account for Disputed Claims.** On and after the Effective Date, the Disbursing Agent shall establish the Disputed Claims Reserve and shall hold in the Disputed Claims Reserve: (i) cash in an aggregate amount sufficient to pay to each holder of a Disputed Unsecured Claim the amount that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date and (ii) net earnings on such cash. All cash and earnings thereon shall be used to satisfy any expenses incurred in connection with the maintenance of the Disputed Claims Reserve, including taxes payable on such interest income, if any.

**8.4 Investment of Disputed Claims Reserve.** The Disbursing Agent shall be permitted, from time to time, in its sole discretion, to invest all or a portion of the cash in the Disputed Claims Reserve in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such cash without inordinate credit risk or interest rate risk.

**8.5 Allowance of Disputed Claims.** If, on or after the Effective Date, any Disputed Unsecured Claim becomes an Allowed Claim, the Disbursing Agent will, within fourteen (14) days after the Claim becomes an Allowed Claim, distribute from the Disputed Claims Reserve to the holder of such Allowed Claim (i) cash in an aggregate amount sufficient to pay to each holder of a Disputed Claim the amount that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date and (ii) net earnings on such cash.

**8.6 Release of Funds from Disputed Claims Reserve.** To the extent a Disputed Claim is disallowed, the cash attributable to such Disallowed Claim will be distributed to the Debtors or the Reorganized Debtor; provided, however, that the Disbursing Agent shall retain at all times until closing of the Disputed Claims Reserve at least $25,000 cash from which the Disbursing Agent shall pay the costs and fees, if any, of administering the Disputed Claims Reserve.

**8.7 Closing of the Disputed Claims Reserve.** After the last Disputed Claim is resolved, whether by Final Order of the Bankruptcy Court or by stipulation between the Debtors or the Reorganized Debtor and the holder of such Disputed Claim, the Disbursing Agent shall (i) distribute to the holder of Claims cash as provided for in Article 8.5 hereof, (ii) pay all remaining costs and fees of the Disputed Claims Reserve (iii) distribute all remaining cash to the Reorganized Debtor and (iv) close the Disputed Claims Reserve.

BANK_FIN:577964-3 032279-180179

# ARTICLE IX.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1 Club Lease.** On the Closing Date, PAA and PAALC will each respectively assume the Club Lease.  PAA and PAALC agree that there are no defaults and no amounts due and owing under the Club Lease.  The Club Lease will be assigned to Walnut PAA for valuable consideration to be allocated and paid from the Purchase Price.

**9.2 Collective Bargaining Agreements.** On or about the Petition Date, PAA shut its doors and has no union employees other than a single engineer who was responsible for boiler system maintenance, and who will leave PAA's employment when the Clubhouse has been winterized.  Thereafter, the Clubhouse will remain closed through and beyond the Closing Date.

PAA and the Pennsylvania Joint Board of UNITE HERE, Local 57 are parties to a collective bargaining agreement dated November 1, 2008 (the "UNITE HERE CBA").  The UNITE HERE CBA expired on February 28, 2011 and continues on a year to year basis until a party gives the other party notice of its intent to terminate the agreement within sixty (60) days prior to the expiration date. PAA has given notice of termination to UNITE HERE in accordance with applicable law and provisions of the UNITE HERE CBA.  Pursuant to its contractual terms, the UNITE HERE CBA terminates on February 28, 2018.

PAA and the International Union of Operating Engineers Local 95-95A, AFL-CIO ("OE") are parties to a collective bargaining agreement dated February 1, 2012 (the "OE CBA").  The OE CBA expired on January 31, 2014 and continues on a year to year basis until a party gives the other party notice of its intent to terminate the agreement within sixty (60) days prior to the expiration date.  PAA has given notice of termination to OE in accordance with applicable law and provisions of the OE CBA.  Pursuant to its contractual terms, the OE CBA terminates on January 31, 2018.

**9.3 Ground Lease.** PAALC has filed an adversary complaint challenging, *inter alia,* the validity and extent of the Ground Lease.  To the extent that the Court determines that the Ground Lease is valid or the parties arrive at a consensual resolution, the Ground Lease will be assumed and assigned to Walnut PAA at Closing.

**9.4 All Remaining Executory Contracts and Unexpired Leases.** On the Confirmation Date, all executory contracts and unexpired leases that exist between the Debtors and any Person, whether or not previously listed by the Debtors on Schedule "G" of its Schedules, shall be deemed rejected as of the Confirmation Date, except for any executory contract or unexpired lease (a) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date, or (b) as to which a motion for approval of the assumption or rejection of such contract or lease is pending on the Confirmation Date including but not limited to, as part of the Sale of the Sale Assets.

BANK_FIN:577964-3 032279-180179

**9.5 Approval of Rejection of Executory Contracts and Unexpired Leases**. Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

## ARTICLE X.
## EFFECT OF THE PLAN ON CLAIMS

**10.1 Exculpation and Related Injunction**

(a) **Satisfaction of Claims against the Debtors**. The treatment to be provided for respective Allowed Claims against the Debtors pursuant to the Plan shall be in full satisfaction, settlement, and release of such respective Claims. Except as otherwise expressly provided for herein, any claims of the Debtors or the Estates against the Holders of any Allowed Claims shall not be deemed compromised and are expressly preserved upon confirmation of the Plan.

(b) **Discharge and Injunction**.

(1) As to PAA, except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against PAA, or any of the Assets or any other assets of PAA in existence on or after the Petition Date. Except as otherwise provided in the Plan or the Confirmation Order: (i) on the Effective Date, PAA shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Bankruptcy Code from all Claims, including, but not limited to, demands, liabilities, Claims, that arose before the Confirmation Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a Proof a Claim or proof of interest based on such debt or interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim or interest based on such debt or interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (c) the Holder of a Claim or interest based on such debt or interest has accepted the Plan; and (ii) all Entities shall be precluded from asserting against the Disbursing Agent, his successors or its Assets or properties any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date. Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims against any and all debts and liabilities of PAA, as provided in sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against PAA at any time obtained to the extent that it relates to a Claim discharged.

(2) As to PAALC there will be no discharge in accordance with Section 1141(d)(3) of the Bankruptcy Code.

(3) Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all Entities who have held, currently hold or may hold a debt, Claim or Interest paid pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such debt, Claim or interest: (i) commencing or continuing

in any manner any action or other proceeding against the Debtors and its successors or their respective Assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtors and its successors or their respective Assets or properties; (iii) creating, perfecting, or enforcing any Lien or encumbrance against the Debtors and its successors or their respective Assets or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtors and their successors or their respective Assets or properties; and (v) commencing or continuing, any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Any Entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

(c) **Indemnification**. Notwithstanding anything to the contrary in this Plan, the Debtors' obligations to indemnify Persons who served during the Chapter 11 Case as the Debtors' members, employees, and Professionals existing under applicable non-bankruptcy law (whether arising under contract, bylaw, or articles of organization) with respect to all present and future actions, suits, and proceedings against any of such indemnified Persons, based upon any act or omission related to service with, for, or on behalf of the Debtors at any time during the period from the Petition Date through the Effective Date (including but not limited to acting as employee benefit plan fiduciaries or employee benefit administrative trustees), in all cases net of applicable insurance proceeds, other than for acts constituting willful misconduct or gross negligence, shall not be released.

(d) **Exculpation**. As of the Effective Date, neither the Debtors, the Committee, the members of the Committee, the Debtors' Professionals nor the Committee's Professionals will have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date in connection with or related to the Case, including but not limited to: (i) the Debtors' consent to the entry of an order for bankruptcy relief under Chapter 11 of the Bankruptcy Code, (ii) the administration of the Chapter 11 Case, (iii) the operation of the Debtors' business during the pendency of the Chapter 11 Case, (iv) the formulating, preparing, disseminating, implementing, confirming, consummating, and administering of the Plan (including soliciting acceptances or rejections thereof), (v) the submission of and statements made in, the Disclosure Statement or any contract, instrument, release, or other agreement or document entered into, or any action taken or omitted to be taken in connection with the Plan, and (vi) any distributions made pursuant to the Plan, except for acts constituting willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The entry of the Confirmation Order shall constitute a determination by the Bankruptcy Court that Persons or Entities covered under this section of the Plan have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among other provisions of law, Sections 1125(e) and 1129(a)(3) of the Bankruptcy Code, with respect to the foregoing.

BANK_FIN:577964-3 032279-180179

## ARTICLE XI.
## EFFECTIVENESS OF THE PLAN

**11.1 Conditions Precedent to the Effective Date.** The following are conditions precedent to the Effective Date of the Plan:

**(a)** The Bankruptcy Court shall have entered the Confirmation Order confirming the Plan, in form and substance satisfactory to the Debtors and the Committee;

**(b)** No stay of the Confirmation Order shall then be in effect and the Confirmation Order is a Final Order;

**(c)** The Closing on sale of the Sale Assets (and if necessary the sale of the Artwork) shall have occurred and the Debtors shall have sufficient cash to pay in full all Allowed Claims as provided under the Plan; and

**(d)** All agreements and instruments contemplated by, or to be entered into pursuant to, the Plan and its provisions, including without limitation, each of the other Plan Documents necessary for the effectuation of the Plan, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived;

**11.2 Waiver of Conditions.** Notwithstanding the foregoing, the Debtors, only after obtaining the consent of the Committee, may waive the occurrence of any of the foregoing conditions precedent. Any such waiver of a condition precedent hereof may be affected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Debtors decide that one of the foregoing conditions cannot be satisfied and the occurrence of such condition is not waived, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

**11.3 Effect of Non-Occurrence of the Conditions Precedent**. After entry of the Confirmation Order, if one or more of the conditions to consummation has not been satisfied and the Debtors and the Committee jointly determine that it is not possible or not likely that such condition(s) will be satisfied, the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against the Debtors.

## ARTICLE XII.
## EFFECTS OF CONFIRMATION

**12.1 Vesting of Assets in Reorganized Debtor.** As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, all property, Assets and claims owned by the Debtors shall vest in the Reorganized Debtor for purposes of

BANK_FIN:577964-3 032279-180179

Distribution under the Plan, free and clear of all Claims, except as otherwise expressly provided and subject to the provisions of the Plan, the Confirmation Order or the Bankruptcy Code.

**12.2 Binding Effect.** On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against PAA and their successors and assigns, whether or not the Claim is impaired under the Plan and whether or not such holder has accepted the Plan.

**12.3 Term of Injunctions or Stays.** All injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case.

**12.4 Rights of Action.** On and after the Effective Date, the Reorganized Debtor will have the exclusive right to enforce any and all present or future rights, claims or causes of action against any Person. The Reorganized Debtor may pursue, abandon, settle or release any or all such rights of action, as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court. The Reorganized Debtor may, in their sole discretion, offset any such claim held against a person against any payment due such person under the Plan; provided, however, that any claims of the Debtors arising before the Petition Date shall first be offset against Claims against the Debtors arising before the Petition Date.

**12.5 Injunction.** On and after the Confirmation Date, all Persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right or cause of action of the Debtors for which the Debtors or the Reorganized Debtor retain sole and exclusive authority to pursue in accordance with the Plan. PAA intends that the Plan will operate as a discharge of all debts of PAA to the fullest extent permitted by 11 U.S.C. §1141(d).

## ARTICLE XIII.
## RETENTION OF JURISDICTION

**13.1 Jurisdiction of Bankruptcy Court.** The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising in, or related to, the Chapter 11 Case and the Plan for, among other things, the following purposes:

(a) To hear and determine any motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases, and the allowance of any Claims resulting there from;

(b) To determine any and all pending adversary proceedings, applications, and contested matters;

(c) To hear and determine any objection to any Claims;

(d) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

28

(e) To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(f) To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g) To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(h) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan;

(i) To determine and recover all Assets of the Debtors and property of the Estates, wherever located;

(j) To hear and determine matters concerning state, local, and federal taxes in matters filed or to be filed accordance with *inter alia* sections 105, 346, 505, and 1146 of the Bankruptcy Code;

(k)  To hear and determine all matters concerning the sale of the Sale Assets;

(l) To hear any other matter consistent with the provisions of the Bankruptcy Code; and

(m) To enter a final decree closing these Chapter 11 cases.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

**14.1 Payment of Statutory Fees.** All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall constitute Administrative Expense Claims and be paid by the Debtor in accordance with section 2.1 of the Plan.

**14.2 Modification of Plan.** The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A holder of an Allowed Claim that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

**14.3 Withdrawal or Revocation.** The Debtors may withdraw or revoke the Plan at any time prior to the Effective Date. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any other person in any further proceedings involving the Debtors.

**14.4 Courts of Competent Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**14.5 Notices.** Any notices to or requests of the Debtors or the Reorganized Debtor by parties in interest under or in connection with the Plan shall be in writing and served either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) national overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

| | | |
|---|---|---|
| **Pittsburgh Athletic Association** | **Tucker Arensberg, P.C.** | **Gleason & Associates, P.C.** |
| **c/o James Sheehan, President** | **c/o Jordan S. Blask, Esq.** | **c/o William Krieger** |
| **4215 5th Avenue** | **1500 One PPG Place** | **420 Fort Duquesne Blvd # 525** |
| **Pittsburgh, PA 15213** | **Pittsburgh, PA 15222** | **Pittsburgh, PA 15222** |

**14.6 Severability.** In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.7 Governing Law.** Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflicts of law thereof.

**14.8 Headings.** Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

BANK_FIN:577964-3 032279-180179

**14.9 Final Decree**. Once the Estate has been fully administered pursuant to Bankruptcy Rule 3022, the Debtors shall file a motion with the Bankruptcy Court to obtain a Final Decree to close the case.

**14.10 No Admissions**. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including but not limited to liability on any Claim or the propriety of a Claim's classification.

**14.11 Confirmation Order and Plan Control**. To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement and any other agreement entered into between or among the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any later order of the Bankruptcy Court) controls the Plan.

Dated:  December 22, 2017                     Respectfully Submitted,

                                              TUCKER ARENSBERG, P.C.

                                              /s/*Jordan S. Blask*_____
                                              Jordan S. Blask, Esq. (Pa. I.D. 308511)
                                              Jillian Nolan Snider, Esq. (Pa. I.D. 202253)
                                              1500 One PPG Place
                                              Pittsburgh, PA  15222
                                              Phone: (412) 566-1212
                                              Fax: (412) 594-5619
                                              jblask@tuckerlaw.com
                                              jsnider@tuckerlaw.com

                                              *Counsel for the Debtors*

31